UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X

SAMUEL MANOHARAN,

       Petitioner,

  v.

UNITED STATES OF AMERICA,

       Respondent.
----------------------------------------------------X

NOT FOR PUBLICATION

12 MC 68 (SJ)

MEMORANDUM AND ORDER

A P P E A R A N C E S

PAUL D. PETRUS, P.C.
350 Fifth Avenue
Suite 3601
New York, NY 10118
By:    Paul D. Petrus

UNITED STATES ATTORNEY
Loretta E. Lynch
271 Cadman Plaza East
Brooklyn, NY 11201
By:    Patricia Notopoulos

**JOHNSON, Senior District Judge:**

      On October 8, 1993, petitioner Samuel Manoharan ("Manoharan" or "Petitioner") appeared before this Court and pled guilty to mail fraud pursuant to 18 U.S.C. § 1341. Specifically, Manoharan was employed by the New York

1

School Construction Authority ("SCA") as a contract specialist. A contractor, Christ Gatzonis Electrical Contractor, Inc. (the "Contractor"), attempted to obtain a contract with the SCA through a bid rigging scheme. In furtherance thereof, the Contractor submitted multiple $500 payments to another individual employed by CSA, who in fact was a confidential informant working for the government (the "CI"). The CI offered one such payment to Petitioner, who initially accepted the money but returned it the following day, when he demanded the bribe be $5,000. Under the United States Sentencing Guidelines, the applicable term of imprisonment for this offense was 0-6 months.

On December 17, 1993, the Court declined to impose a term of imprisonment and sentenced Manoharan to three years probation (including six months of home confinement), 500 hours of community service, and a $10,000 fine.[1] He now moves to have the record of his conviction expunged, pursuant to 18 U.S.C. § 1341. In support of his argument, Petitioner cites the fact that the charged offense has been his only contact with the criminal justice system, and constituted a momentary lapse in judgment. Petitioner is an engineer, and claims that the process of renewing his professional license will cause his conviction to appear on subsequent licensing websites. He also submits that he has made numerous contributions to charitable organizations and cites his difficulty obtaining life insurance or entry into a retirement community. The government opposes.

---

[1] The record does not indicate any incidence of Manoharan's non-compliance with the terms of probation.

DISCUSSION

"The power to expunge is a narrow one . . . and should be reserved for the unusual or extreme case." United States v. Schnitzer, 567 F.2d 536, 539 (2d Cir. 1977). The standard is stringent and balances the government's need to maintain records with the harm alleged by the moving party. Id.; Doe v. Immigration & Customs Enforcement, 2004 WL 1469464, at *2 (S.D.N.Y. June 29, 2004) ("The appropriateness [of expunction] is determined on a case-by-case basis," as the remedy requires the presence of "extraordinary circumstances.").

> This reluctance to alter accurate criminal justice records is particularly acute when the movant has been convicted and is seeking to expunge the record of his conviction. . . . The considerations that animate this strong policy include the need for punishment (including some of the collateral consequences of a criminal conviction), deterrence, and the needs of law enforcement and the public.

United States v. Melton, 2001 WL 345217, at *1 (S.D.N.Y. Apr. 9, 2001) (citations omitted). Accordingly, the decision to expunge a defendant's criminal record is one committed to the discretion of the District Court, and Petitioner's burden is a heavy one.

In this case, Manoharan has failed to demonstrate the type of extraordinary circumstances that would warrant expunction. He claimed in his moving papers that he is unable to renew his engineering license, but at oral argument admitted that he had not attempted to do so, and therefore does not know if that is true. Cf. United States v. Doe, 935 F. Supp. 478 (S.D.N.Y. 1996) (granting motion to

expunge where movant showed an "actual impact on his employment" in the form of a suspension); Doe v. United States, 964 F. Supp. 1429, 1434 (S.D.Cal. 1997) (granting motion where petitioner's employer suspended him pending the outcome of the expunction proceedings). Manoharan further alleges that he "would have a hard time purchasing a condominium in a retirement community," which is also speculative. While it is commendable that Manoharan has made regular contributions to a variety of charitable organizations and, outside of the instant conviction, has had no run-ins with the law during his 40-plus years in the United States, he has failed to establish extraordinary circumstances of the type required. See, e.g., Doe, 2004 WL 1469464, at *1 (expunging arrest record where a background check revealed a non-existent arrest and non-existent deportation proceedings, causing petitioner to be denied employment as a police officer).

Manoharan cites three cases in which a motion to expunge was granted and each of those cases involve individuals who were convicted under the Youth Corrections Act, 18 U.S.C. 5005 et seq. ("YCA"), and had their respective sentences set aside. Those cases are wholly distinguishable from Manoharan's conviction in that the very purpose of setting aside a sentence pursuant to the YCA is to afford a young person the opportunity to rehabilitate and start anew. See United States v. Doe, 2004 WL 1124687, at *3 ("The clear purpose for setting aside a youthful offender's conviction [is] to relieve him not only of the usual disabilities of a criminal conviction, but also to give him a second chance free of a

record tainted by such a conviction."); Doe, 935 F. Supp. at 481 (granting motion to expunge and finding "most important" that petitioner was sentenced under the YCA and had his conviction set aside); Doe, 964 F. Supp. at 1434-5 (granting motion to expunge where petitioner "may lose a good job and be at risk for future prolonged unemployment based on a single criminal conviction which occurred twenty-seven years ago when [he] was a minor, and which has already been vacated.").

Indeed, the only case cited by Manoharan that involves a conviction by guilty plea of an adult offender resulted in a denial of the motion to expunge. See McFadzean, 1999 WL 993641 (S.D.N.Y. Nov. 2, 1999); cf. United States v. Bryde, 914 F. Supp. 38, 40 (N.D.N.Y. 1996) (denying motion to expunge and noting the "distinction between circumstances in which expunction is sought by a wholly innocent individual, mistakenly arrested and indicted, and a situation where relief is sought by a defendant who has been convicted and admits her guilt"). It is also noteworthy that courts typically deny motions to expunge even the arrest records of those not convicted of any crime – in other words, individuals far less culpable than Manoharan, or not culpable at all. See Schnitzer, 567 F.2d at 540 (affirming denial of motion to expunge an arrest for charges later dismissed because the "arrest and indictment were both legal, as was the law under which [petitioner] was charged" and because "there [was] no evidence that harsh damage would indeed accrue"); Moss v. United States, 2011 WL 1706548, at *2 (E.D.N.Y. May 4, 2011)

("[C]ourts generally reserve the power of expungement [*sic*] for the extreme circumstances when an arrest or conviction is invalidated by government error or misconduct and the defendant's innocence is presumed.") (citations omitted); Gardner v. United States, 2010 WL 2292222, at *2 (E.D.N.Y. Apr. 6, 2010) (denying motion to expunge where petitioner "states only that he is seeking a security license, and apparently invites speculation that the presence of a decades-old dismissed [criminal] complaint on his record will necessarily prejudice his application for that license."); but see Natwig v. Webster, 562 F. Supp. 225 (D.C.R.I. 1983) (granting motion to expunge where petitioner's arrest resulted in a "no true bill" before a grand jury and his arrest was disclosed to his employer).

Without more, Manoharan fails to demonstrate that the collateral consequences of conviction from which he suffers are out of the ordinary, much less that they are extreme. To grant his motion to expunge a conviction when a mere arrest seldom qualifies for expunction would be to leave Petitioner in a better position than if he had been acquitted or had the indictment been otherwise dismissed. Therefore, the motion is denied. The Clerk of the Court is directed to close the case.

SO ORDERED.

DATED: July 12, 2012 _____/s_____
      Brooklyn, New York       Sterling Johnson, Jr, U.S.D.J.